IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION      RECEIVED

2005 JUL 29  P 4: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT,
MIDDLE DISTRICT AL.

| | | |
|---|---|---|
| XAVIER JOHNSON, | § | |
| | § | CASE NO. CV-05- |
| | § | |
| Plaintiff, | § | JURY DEMAND |
| | § | |
| v. | § | 2:05CV 704 - M |
| | § | |
| BIG 10 TIRES, INC., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

## I. INTRODUCTION

1.     This is a civil rights action for legal and equitable relief to redress the deprivation of rights guaranteed by the Constitutions and laws of the United States and the State of Alabama, *i.e.*, unlawful race discrimination and retaliation in employment, and violations of state tort law.

2.     Plaintiff's claims are based upon Title VII of the Civil Rights Act of 1964 as amended, codified at 42 U.S.C. §§ 1981a & 2000(e), *et seq.*, including 42 U.S.C. § 2000e-3(a) (retaliation); and pursuant to 42 U.S.C. § 2000e-5(f)(3) & (g); 42 U.S.C. § 1981.

## II. JURISDICTION AND VENUE

3.     This Court has jurisdiction over this cause pursuant to 28 U.S.C. §§ 1331 and 1343. In addition, the jurisdiction of this Court is pursuant to 28 U.S.C. §§ 2201

& 2202 (Declaratory Judgment Act). Furthermore, jurisdiction over Plaintiff's

claims for injunctive relief, costs, expenses and attorney fees is additionally

conferred by 42 U.S.C. § 1988.

4.     Plaintiff has exhausted the necessary administrative remedies. Prior to filing this

civil action, Plaintiff timely filed a written charge with the Equal Employment

Opportunity Commission ("EEOC") within 180 days of the discriminatory acts

asserting unlawful discrimination. Plaintiff filed his EEOC charge on May 12,

2004. This civil action is filed within 90 days of the EEOC issued Right to Sue

letter dated May 4, 2005.

5.     Jurisdiction over Plaintiff's claims based on Alabama law exists under the

Doctrine of Supplemental Jurisdiction. 28 U.S.C. § 1367.

6.     All acts complained of herein relate to Plaintiff's place of employment within the

Middle District of Alabama and venue is proper in the Middle District of

Alabama. 28 U.S.C. § 1391.


### III. THE PARTIES

7.     Xavier Johnson is an African American male resident of Montgomery County,

Alabama and a citizen of the United States. Johnson has been employed with Big

10 Tires, Inc. at different stores in Montgomery, AL since April 22, 2003.

8.     Defendant is an independent tire retailer with over 90 locations in Georgia,

Florida and Alabama. Defendant Big 10 Tires, Inc. operates a retail tire store

incorporated under the laws of Florida and conducts business by agent in the State

of Alabama. Defendant is an "employer" within the meaning of Title VII and is

subject to suit under all of the claims alleged herein.

9.    Defendant is subject to personal jurisdiction in the State of Alabama for the

purpose of this lawsuit.

## IV.    FACTUAL ALLEGATIONS

10.    On April 22, 2003, Plaintiff was hired to work as a full-time Tire Tech at Big 10's

Atlanta Highway store (No. 26) in Montgomery, AL.

11.    Plaintiff's starting salary was $6.50/hr.

12.    Plaintiff's starting salary was lower than white employees hired full-time for the

same position.

13.    Plaintiff was told that if he had satisfactory performance within the first 90 days,

he would receive a raise.

14.    William (Billy) J. Lynam, a white male, was the store manager at the Atlanta

Highway location and Plaintiff's supervisor. Don Day, a white male, was co-

manager at this location.

15.    The office of the Market/District Manager is located in the Atlanta Highway store

where Plaintiff worked. Chuck Fuqua, a white male, was the Market/District

Manager.

16.    Plaintiff was described by Lynam as "an excellent employee who works hard and

learns quick."

3

17.    A number of white Tire Techs hired after Plaintiff received higher starting salaries and were granted raises on a more frequent basis.

18.    For example, John Starling, a white Tire Tech hired after Plaintiff, received a starting salary of $7.00/hr. and a raise to $7.50/hr. shortly thereafter.

19.    Plaintiff asked Lynam why he had received a lower starting salary than white employees. Lynam did not provide an explanation for this discrepancy.

20.    Over one month after his hire, Plaintiff's salary was changed to $ 7.00/hr., the salary he should have received upon his hire.

21.    Lynam had previously worked at Big 10's Zelda Road Store (No. 82) in Montgomery, but instead of being disciplined after having a physical fight with a African American employee, he was transferred to the Atlanta Highway store.

22.    The African American employee was fired as a result of this incident, but Lynam was merely transferred to manage the Atlanta Highway store.

23.    On several occasions, Lynam demonstrated his racial animus towards African Americans. During the course of Plaintiff's employment, he heard Lynam use the "n" word.

24.    For example, shortly after Plaintiff's hire, Lynam made a reference to an African American co-worker stating, "He's a nigger, but he works really hard." Lynam then laughed at this statement.

25.    A number of African American employees heard Lynam's use of the "n" word and believed him to be a racist.

4

26.    Plaintiff also witnessed Lynam condoning the use of the "n" word by other white employees.

27.    For example, Plaintiff heard Brian Stout, a white employee, use the "n" word in Lynam's presence. Stout used the excuse, "Y'all (meaning African Americans) say it, so I can say it." Lynam did not reprimand or otherwise discipline Stout for this language.

28.    When Plaintiff discussed his concerns about these types of comments with other African American employees, they indicated that they were powerless. These employees - most of whom are no longer employed with Big 10 - said that Lynam was a racist. They stated, "That is how he is. He's a racist." These employees knew about Lynam's reputation even before he was transferred to the Atlanta Highway store.

29.    Upon information and belief, African Americans tolerated Lynam's behavior because it was hard to find a job in Montgomery. However, a number of African-American employees left Big 10 because of Lynam's discriminatory behavior.

30.    Lynam treated white employees more favorably than African American employees in the terms and conditions of their employment.

31.    For example, if a white employee was late to work, Lynam did not comment or otherwise criticize the employee. However, when an African American employee was late, Lynam would become angry, chastise the employee and change the employee's work hours.

32. When business was slow and all employees were not needed to perform the work, Lynam allowed white employees to stand around while African American employees worked.

33. At other times, Lynam would choose to send African American employees home first while allowing white employees to stay at work.

34. Lynam often referred to African American customers as "stupid", "ignorant", and "typical nigger."

35. In March 2004, Terry Troutman, a white male, replaced Fuqua as the Market/District Manager and Lynam's supervisor.

36. At the beginning of 2004, Plaintiff began asking Lynam about the raise promised to him when he was hired.

37. Instead of giving Plaintiff a raise, in April 2004, Lynam drastically cut his work hours.

38. For example, the first week in April, Plaintiff worked only 11.71 hours.

39. Up to that point, Plaintiff had been working 8-10 hour days, 5 days a week, averaging over 40 hours per week.

40. Lynam instructed Plaintiff to call in first before coming in to see if he was needed.

41. As instructed, Plaintiff called every morning to check to see if there was work for him. Plaintiff did not miss a day calling in.

42. Plaintiff did not work at all during the second week in April because Lynam told him that he did not need to come in to work.

43.  Shortly after Lynam cut Plaintiff's hours, Lynam hired a new Tire Tech, a white male named Scott, and made him a permanent, full-time employee.

44.  Lynam also hired a second white Tire Tech on a part-time basis.

45.  The hiring of these two white employees resulted in Plaintiff's hours being cut back to zero.

46.  Even after Scott, the white employee who replaced Plaintiff, voluntarily quit Big 10, Plaintiff was not called in to work.

47.  Because of Defendant's intentional refusal to allow Plaintiff to work, he was effectively terminated.

48.  Following Plaintiff's reduction in hours, Plaintiff was told by white co-workers that Lynam had stated on or about mid-February, 2004, that "the situation has gotten too dark in here" and he needed "to lighten things up."

49.  This statement was made around the same time that Lynam began cutting Plaintiff's hours.

50.  Plaintiff was also told by white co-workers that Lynam would make racist statements such as: "I'm not prejudiced. I think everyone should own two or three of them," referring to African American people and slavery.

51.  Lynam informed the co-manager of the Atlanta Highway store, Don Day, that he was going to eliminate all of the African Americans in the store.

52.  Plaintiff was not allowed to work again at the Atlanta Highway Store until 2005.

7

53.    On or about April 14, 2004, Plaintiff complained to Troutman about his work schedule and indicated that it was his belief that he had not been placed on the work schedule because of his race.

54.    Plaintiff also complained to Troutman about his lower starting salary and the raise he had been promised.

55.    Without investigating or taking steps to remedy the situation, Troutman replied, "We don't discriminate."

56.    Troutman then asked Plaintiff if he would transfer to another store.

57.    Plaintiff told Troutman it would not be convenient for him to transfer, but agreed to relocate because he was desperate for work.

58.    Plaintiff's initial assignment following the reduction in his work hours was at the Madison Avenue (No. 23) location.

59.    However, The discriminatory work pattern he experienced at the Atlanta Highway location continued.  Plaintiff was not given sufficient hours at the Madison Avenue location to earn a living.

60.    For example, while Plaintiff received a reduction of hours, a white Tire Tech at the Madison Avenue store was given overtime.  Plaintiff was also sent home first while white employees were allowed to remain at work.

61.    Since Lynam reduced Plaintiff's work hours, Plaintiff has rotated between Big 10's stores in the Montgomery area.

8

62. Plaintiff continues to receive reduced work hours and only works about three days a week.

63. Employees of Big 10 are awarded an incentive pay for items that they sell in addition to tires.

64. For example, an employee receives, in addition to his hourly salary, $2 for brakes, $2 for shocks and $1 for air filters.

65. After Plaintiff asked Lynam about his raise, he no longer received incentive pay on the extra items that he sold in addition to tires.

66. Plaintiff has not received incentive pay since 2004.

67. Plaintiff's treatment is part of a pattern and practice of racial discrimination which includes the constructive termination, the reduction in hours, the transfer to a less convenient location, the payment of a lower hourly wage than similarly situated white employees, the hostile work environment based on race, the denial of a raise, the denial of incentive pay, and other adverse terms and conditions of employment.

68. A racially discriminatory work environment existed and has continued from the time of Plaintiff's hire throughout his employment.

69. Plaintiff believes that racial discrimination is the standard operating procedure at Big 10 Tires, Inc.

70.    Plaintiff has been and continues to be discriminated against and retaliated against in the terms, conditions and privileges of employment, as stated above, based on his race and because he has opposed race discrimination.

71.    Plaintiff was directly affected by said discriminatory and retaliatory practices and by being deprived of the opportunity to work in an environment free of racial discrimination and retaliation. Such discrimination and retaliation denied Plaintiff the right to work in a racially integrated work environment and otherwise affected his opportunity for enjoyment of work as compared to white employees.

72.    As a result of said injury and damage, Plaintiff is entitled to back pay with interest, reinstatement to full-time employment at a proper location, front pay, and compensatory and punitive damages, attorneys' fees and costs.

## V. STATEMENT OF CLAIMS

### CLAIM ONE
### VIOLATION OF TITLE VII, 42 U.S. C.  § 2000e *et seq.*
### (Discrimination on the Basis of Race)

73.    Plaintiff realleges the above paragraphs as if fully set out herein.

74.    Plaintiff is a member of a class protected by  42 U.S.C. § 2000e *et seq.*, and is qualified for employment with Big Ten Tires, Inc.

75.    The conduct of Defendant, Big 10 Tires, Inc., as set forth above, constitutes unlawful discrimination against Plaintiff on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and is part of

10

Defendant's pattern and practice of discrimination on the basis of race. Plaintiff was denied a work environment free of discrimination in violation of 42 U.S.C. § 2000e *et seq.*, *as amended*, 42 U.S.C. § 1981a, and was not given equal opportunity in the terms and conditions of his employment.

76.    Defendant's said treatment of Plaintiff on the basis of race altered the terms and conditions of Plaintiff's employment and unreasonably interfered with Plaintiff's opportunity and ability to perform his job.

77.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of promotion opportunities, loss of income, loss of other employment benefits, mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to his reputation.

## CLAIM TWO
## RETALIATION UNDER TITLE VII, 42 U.S.C. § 2000e-3(a)
### (Retaliation)

78.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

79.    The conduct of Defendant, as set forth herein, constitutes unlawful retaliation against Plaintiff for his having opposed discriminatory treatment based upon race, in violation of Title VII and 42 U.S.C. § 1981a.

80.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of promotion opportunities, loss of income, loss of other employment benefits, mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to his reputation.

11

## CLAIM THREE
## VIOLATION OF 42 U.S.C. § 1981
### (Discrimination and Retaliation on the Basis of Race)

81.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

82.    Plaintiff is a member of a class protected by 42 U.S.C. § 1981 and is qualified for

employment with Big Ten Tires, Inc.

83.    The conduct of Defendant, its agents and employees constitutes unlawful

discrimination and retaliation against Plaintiff on the basis of race, in violation of

42 U.S.C. § 1981, and constitutes part of Defendant's pattern and practice of

retaliation and discrimination on the basis of race.

84.    As a direct and proximate result of said acts, Plaintiff has suffered and continue to

suffer loss of employment, loss of promotion opportunities, loss of income, loss of

other employment benefits, mental and emotional distress, humiliation, loss of

self esteem, depression, expense, embarrassment, and damage to his reputation.


## CLAIM FOUR
## NEGLIGENT SUPERVISION AND TRAINING

85.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

86.    This is a claim arising under the law of the State of Alabama claiming that

Defendant committed the tort of negligent supervision and training.

87.    At all relevant times, the Defendant was and continues to be responsible for the

training and supervision of its store managers at its various locations throughout

Alabama.

12

88.    The conduct of the Defendant, as set forth above, was a breach of said Defendant's duty to Plaintiff to exercise care in supervising and training employees, and such breach proximately caused Plaintiff to be discriminated and retaliated against, suffer humiliation, mental pain and anguish, and all other injuries outlined herein, all to Plaintiff's damage.

## CLAIM FIVE
## NEGLIGENT RETENTION

89.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

90.    This is a claim arising under the law of the State of Alabama claiming that Defendant committed the tort of negligent retention.

91.    The conduct of the Defendant, as set forth above, was a breach of its duty to Plaintiff to exercise care in retaining employees, and such breach proximately caused him to be discriminated and retaliated against, suffer humiliation, mental pain and anguish, and all other injuries outlined herein, all to Plaintiff' damage.

## CLAIM SIX
## NEGLIGENCE

92.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

93.    This is a claim arising under the law of the State of Alabama claiming that Defendant committed the tort of negligence.

13

94.   Defendant, by its actions and omissions, breached the standard of care owed to Plaintiff while an employee of said Defendant. The conduct of said Defendant, as set forth herein, was a breach of its duty to Plaintiff to exercise due care.

95.   The conduct of Defendant, as set forth above, was a breach of its duty to Plaintiff to exercise due care, and such breach proximately caused him to be discriminated and retaliated against, suffer humiliation, mental pain and anguish and all other injuries outlined herein, all to Plaintiff's damage.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant:

(a)   Declaring that the acts and practices complained of herein are in violation of Title VII, 42 U.S.C. §§ 1981, 1981a, & 2000e *et seq.*, and state tort law;

(b)   Ordering Defendant, Big 10 Tires, Inc. to make Plaintiff whole by providing appropriate front pay, back pay and interest thereon, and reimbursement for lost compensation, social security, prejudgment interest, and all other entitlements and emoluments in an amount to be shown at trial, and other affirmative steps immediately to eliminate the effects of the discriminatory practices complained of herein;

(c)   Granting to Plaintiff reasonable attorneys' fees, expert fees, costs, and expenses incurred herein, 42 U.S.C. §§ 1988 & 2000e-5(k);

14

(d)    Granting to Plaintiff compensatory and punitive damages to the extent permitted by law;

(e)    Retaining jurisdiction over this action until the Defendant, Big 10 Tires, Inc. has fully complied with the Orders of this Court and requiring said Defendant to file such reports as may be necessary to supervise such compliance;

(f)    Permanently enjoining Defendant from taking any retaliatory action against Plaintiff;

(g)    Ordering Defendant, Big 10 Tires, Inc., to adopt and strictly enforce written rules prohibiting discrimination and retaliation in the workplace; that such rules provide for the prompt and appropriate investigation of all related complaints; and that such rules require formal disciplinary action to be taken against any employee or agent found to have engaged in such discrimination or retaliation against any employee;

(h)    Granting such other, further, and different relief to Plaintiff which it may deem proper.

Respectfully submitted this _29th_ day of July, 2005.

15

M. WAYNE SABEL *(SAB002)*
Attorney for Plaintiff

MARICIA WOODHAM *(BEN050)*
Attorney for Plaintiff

MARK SABEL *(SAB004)*
Attorney for Plaintiff

**OF COUNSEL:**
Sabel & Sabel, P.C.
Hillwood Office Center
2800 Zelda Rd.; Suite 100-5
Montgomery, AL 36106
(334) 271-2770
(334) 277-2882 *facsimile*

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

MARICIA WOODHAM
Attorney for Plaintiff

16